499 So.2d 1285 (1986)
Norma Brya SELL
v.
EMPLOYMENT SECURITY, et al.
No. CA-6059.
Court of Appeal of Louisiana, Fourth Circuit.
December 9, 1986.
Victor M. Ortiz, New Orleans, for appellant.
Sloan McCloskey, New Orleans, for appellee.
Before REDMANN, GULOTTA and CIACCIO, JJ.
CIACCIO, Judge.
Plaintiff appeals a district court judgment upholding a decision of the Board of Review of the Louisiana Department of Employment Security. The Board of Review had decided that because plaintiff left her job without good cause connected with her employment, she was disqualified for unemployment compensation benefits. See La.R.S. 23:1601(1). We affirm.
Judicial review of decisions of the Board of Review is confined to questions of law. The factual findings of the Board of Review are conclusive, if supported by sufficient evidence and in the absence of fraud. La.R.S. 23:1634. Two questions of law are presented for resolution by the court:

*1286 1) Are the findings of fact supported by sufficient evidence as a matter of law?
2) Based on those findings are the legal conclusions of the Board correct?
The factual findings of the Board are supported by sufficient evidence. They are:
The claimant was employed by [Family Service Society] as a social worker from April 12, 1982, to May 25, 1983. The claimant had tendered her resignation to the employing unit to be effective June 30, 1983, because of a change in the job assignment requiring her to travel. On or about May 16, 1983, the employer advanced the claimant's separation date to May 31, 1983. This action was a result of the claimant's refusal to attend a conference on May 13, 1983. The conference was in regard to a client complaint about the claimant's treatment of the client. The reason for the claimant's refusal was that she had already attended several conferences about the matter, and this client had been transferred to another worker. On Monday, May 23, 1983, the claimant advised the employer that Friday, May 27, 1983, would be her last day of work. She was given permission to use Monday, May 30, 1983, and Tuesday, May 31, 1983, as vacation days. The employer granted this permission contingent on the claimant closing her files and completing the transfer of her clients. The claimant worked through Thursday, May 26, 1983, but failed to show up for work on May 27, 1983. The claimant acknowledged that her files were not complete at the time of separation.
When informed of the scheduled conference on May 13, 1983, plaintiff responded by writing a memo on that day to the director of Family Service. In her memo plaintiff revealed her decision not to attend the conference. She further stated,
I feel I am being harrassed. I am willing to do my job until my effective date of resignation, June 30, 1983. If that is not feasible, please let me know this by Monday, May 16, 1983, so that I can make the necessary arrangements to pick up my personal items from my office.
On Monday, May 16, 1983, the director responded to plaintiff as follows:
You have chosen not to attend a scheduled conference with Mara Rubio in follow-up to her and Jim Feldman's memo on a number of important administrative issues. I advised you of the seriousness of not doing so in our conferences on Friday, May 13th, and this morning.
In view of the fact that you choose not to discuss important issues through this conference, I am setting as your final date of employment May 31, 1983. I am asking you to work with your supervisor to terminate or transfer your clients in as orderly a way as possible during the next two weeks.
The decision of the Board of Review does not address whether plaintiff was being "harassed." The Appeals Referee, however, found "no basis to the claimant's allegations that she was treated arbitrarily and capriciously by the employer." In an earlier opinion the Appeals Referee found, "There is absolutely no evidence to indicate that claimant was either treated arbitrary [sic] or discriminatorily by the employer." These findings are supported by the evidence.
In February 1983 plaintiff tendered her resignation effective the end of June 1983. In the midst of an interoffice conflict in mid-May of 1983, plaintiff expressed her willingness to work through the end of June, but requested of her director, "If that is not feasible, please let me know this by Monday, May 16, 1983, so that I can make the necessary arrangements to pick up my personal items from my office." Responding by Monday, May 16, 1983, as plaintiff requested, the director informed her that he was "setting as your final date of employment May 31, 1983." Plaintiff was paid through May 31, 1983.
Plaintiff resigned her position. As a result of an interoffice conflict, the effective date of her resignation was advanced *1287 one month. The evidence indicates that plaintiff precipitated this advancement and that a final date of employment of May 31, 1983, was agreeable to her. The decision of the Board of Review that plaintiff left her employment without good cause connected with her employment and was, therefore, disqualified for benefits under La.R.S. 23:1601(1) is correct. Therefore, we affirm the judgment of the district court which upheld the decision of the Board of Review.
AFFIRMED.
GULOTTA, J., dissents with reasons.
GULOTTA, Judge, dissenting.
I dissent. Unlike the majority, I conclude that plaintiff did not resign, but rather left her position involuntarily.
Although LSA-R.S. 23:1601(1) disqualifies an employee for unemployment compensation if he has left his job without good cause connected with the employment, the word "left" within the meaning of the statute is intended to cover situations where the employee quits, or voluntarily leaves or resigns. Piggly Wiggly of Springhill, Inc. v. Gerace, 370 So.2d 1327 (La.App. 2nd Cir.1979). The phrase "good cause" as used in the statute means cause connected to working conditions, the ability of the employee to continue employment, the availability of transportation to and from work, and other factors that affect an employee's ability or right to continue work. McGraw v. Director of Postal Data Center, 319 So.2d 797 (La.App. 1st Cir. 1975). Mere dissatisfaction with working conditions is not "good cause" for quitting, unless the dissatisfaction is based upon discriminatory or arbitrary treatment or a substantial change in wages or working conditions from those in force at the time the employment commenced. McGinnis v. Moreau, 149 So.2d 188 (La.App. 3rd Cir. 1963). The circumstances attending the final termination of employment must be compelling and necessitous to constitute "good cause" for leaving employment. Friloux v. Administrator, Div. of Emp. Sec. of D. of L., 136 So.2d 99 (La.App. 4th Cir.1962).
I acknowledge that Sell would not have been entitled to compensation benefits if she had worked without incident through the end of June, 1983, after resigning in February. Because of the dispute in the "problem case" in early May, however, her employer accelerated her termination date to May 31, even though Sell had expressed her desire to work through the end of June. Under these circumstances, her situation changed from one of resignation as of the end of June to one of termination at the end of May. If Sell was not discharged for misconduct and did not abandon her employment after being notified of her accelerated termination in May, then she is entitled to compensation benefits.
My consideration of the record leads me to conclude that Sell neither voluntarily resigned on May 27 nor abandoned her job without good cause. Her failure to report to work on her final day of scheduled employment does not constitute an abandonment without good cause under the circumstances. After receiving approximately two weeks' notice of her termination in mid-May, plaintiff proceeded to transfer her case files and work toward an orderly transition. Undisputed evidence indicates that as of May 23, at the beginning of Sell's final week of employment, the transition was proceeding smoothly. Plaintiff was given permission to take two accumulated days of vacation and finish her employment as of Friday, May 27. Because she became emotionally upset and could no longer function as a therapist, however, she found herself incapable of completing the week as planned. Considering the emotional tension surrounding her departure, and plaintiff's demonstrated good faith to attempt to complete her job, I cannot say that she voluntarily left employment because of simple personal dissatisfaction. It would be a grave injustice to deny her benefits under these circumstances for one or two days' absence.
I further note that plaintiff was not guilty of misconduct connected with employment *1288 that would preclude her from receiving benefits. "Misconduct" within the meaning of LSA-R.S. 23:1601(2) has been defined as an act of wanton or willful disregard of the employers interests, a deliberate violation of the employer's rules, a disregard of standards of behavior that the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, evil design, or intentional and substantial disregard of the employer's interests or the employee's duties and obligations to the employer. Horns v. Brown, 243 La. 936, 148 So.2d 607 (1963); Dawkins v. Sumrall, 424 So.2d 407 (La.App. 2nd Cir.1982). A severe personality clash between an employee and her supervisor that results in the termination, without more, does not justify a finding of misconduct, even though the conflict may give the employer a reason for terminating the employee for the employer's own purpose. Dawkins v. Sumrall, supra.
In the instant case, although the director of FSS may have felt justified in terminating plaintiff after the dispute over the problem case in early May, I cannot conclude that plaintiff's actions in the case constituted intentional wrongdoing or willful disregard of her employer's interests. Moreover, the client had been satisfied by Sell when she transferred her case to another worker. From Sell's standpoint the problem had been resolved. Although she felt strongly that she had acted legally and ethically in dealing with her client in the problem case, plaintiff cooperated with management to mollify the complaining client. She facilitated the transfer of the case to another social worker, and participated in several discussions with her superiors about the problem case. Even though plaintiff failed to attend the meeting of May 13 as requested by her director, she felt that she had done all she could in the case and that her attendance at the meeting would not serve a valid purpose. This honest difference of opinion with her superiors does not constitute misconduct, especially where LSA-R.S. 23:1601 is to be liberally construed in favor of the claimant's entitlement to benefits. See Vernon v. Seitz, 399 So.2d 723 (La.App. 1st Cir.1981).
Furthermore, even if plaintiff failed to complete all her files before leaving, she is still not guilty of misconduct. Substandard work performance is not grounds for disqualifying a worker from unemployment compensation. Jenkins v. Blache, 471 So.2d 909 (La.App. 2nd Cir.1985).
Accordingly, for the foregoing reasons, I respectfully dissent.